LAURA M. HAYNE, Appellant, *vs.* TIMOTHY J. FENTON *et al.* Appellees.

*Opinion filed April 23, 1926—Rehearing denied June 3, 1926.*

1. SPECIFIC PERFORMANCE—*a complainant must show readiness and ability to perform—abstract of title.* A vendor seeking specific performance of a contract for a conveyance must show that he is ready, able and willing to perform the contract on his part; and where he has agreed to furnish an abstract showing a merchantable title, the furnishing of such an abstract is a prerequisite to the obligation to perform on the part of the vendee.

2. SAME—*when vendee cannot be compelled to take title—partition.* A vendee cannot be compelled to take a doubtful title which will expose him to litigation, and the fact that a partition suit is pending at the time for performance of the contract is sufficient to render the title unmerchantable.

3. SAME—*when abstract does not show good title.* Where a vendor seeks specific performance of a contract for conveyance,

which requires him to furnish an abstract showing a merchantable title, the abstract must show that the title is good; and where there is a break in the chain of title as shown by the abstract the purchaser is justified in rejecting the title, even though it may be good under the Statute of Limitations.

4. SAME—*abstract must show good title at time fixed for performance.* On a bill for specific performance of a contract for a conveyance, the sufficiency of the abstract of title is to be determined as of the date fixed by the contract when the vendor is to furnish such abstract and the deal is to be closed, and not at some time subsequent to the filing of the bill.

5. SAME—*vendor not entitled to specific performance after once abandoning contract.* Where the vendor rescinds or abandons his contract he cannot thereafter demand specific performance, and whether the contract has been rescinded or abandoned may be deduced from circumstances or course of conduct.

6. SAME—*when widow of vendor must be held to have abandoned contract.* A widow of the vendor in a contract for a conveyance, who had joined with her husband in the contract and to whom he had assigned a half interest in the contract, must be held to have abandoned the contract where for three years after her husband's death, and after time for performance of the contract has passed, she demands and receives one-half of the rent from the premises covered by the contract by virtue of her renunciation of her husband's will and her election to take under section 12 of the Dower act.

7. SAME—*when delay bars specific performance.* While there are circumstances which excuse delay in the prosecution of a bill for specific performance, ordinarily where a party applies for relief after a long lapse of time, unexplained by equitable circumstances, courts will be cautious in enforcing performance, and where, after one of the parties fails to carry out his contract, the other party delays to proceed for such a length of time as to constitute acquiescence in the breach or a presumption of abandonment, relief in equity will be denied.

8. SAME—*general rule as to when delay of vendor will be excused.* It is only where the vendor has acted in good faith and there has been no change in the property or in the circumstances of the parties which would make it more inequitable to enforce performance of the contract at the time performance is sought than at the time the contract by its terms should have been performed that the long delay will be excused and a decree entered against the purchaser.

APPEAL from the Circuit Court of LaSalle county; the Hon. EDGAR ELDREDGE, Judge, presiding.

CHASE FOWLER, and JAMES J. CONWAY, for appellant.

L. O. BROWNE, and BUTTERS & BUTTERS, for appellee Timothy J. Fenton.

LESLIE D. WHIPP, and WOODWARD, HIBBS & POOL, for other appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

June 29, 1920, Charles H. Dickinson agreed to convey to appellee Timothy J. Fenton 145 acres of land in LaSalle county "by warranty deed and to furnish abstracts showing good merchantable title, and to deliver possession upon the payment of purchase price March 1, 1921." Subsequently Dickinson executed and delivered to his wife an assignment of a one-half interest in this contract executed between himself and wife on the one part and Fenton on the other. Dickinson died two weeks later, leaving him surviving, appellant, his widow, and two sisters, a brother and the daughter of a deceased sister as his heirs. In the fall of 1920 Fenton plowed some of the land preparatory to planting crops thereon the following spring, but the tenant of appellant and Dickinson's heirs continued in possession of the farm. In December, 1920, I. I. Hanna, attorney for appellant, delivered abstracts of title to Fenton, and these were delivered by the latter to his attorney for examination. Shortly thereafter Fenton wrote a letter to Sarah J. Fogg, a sister of Dickinson and executrix of his will, in which he stated that he would "have to throw up the contract" because he had not sold some land he had in Iowa and could not raise the money to pay the purchase price. Three days after Fenton wrote this letter his attorney rendered an opinion on the title to the land and pointed out several defects.

When this opinion was delivered to Hanna he agreed to take steps to perfect the title. Fenton says that appellant called on him in the early part of January, 1921, and agreed to leave $35,000 in the land if he would carry out the contract. Appellant denies this conversation. Fenton says that he went to Hanna's office the same day and told him that he would fulfill his agreement to buy the land and asked Hanna to have everything ready to close the deal March 1. February 4, 1921, a brother of Dickinson filed a bill to partition the land in question, claiming to be the owner of an undivided one-half of the 80-acre tract and of an undivided one-fifth of the 65-acre tract, which tracts comprise the 145 acres in question. Fenton, called as a witness by appellant, testified that he was at Hanna's office March 1, 1921, ready to take the land if he could get a merchantable title, but that Hanna told him he could not make him a good title because of the partition suit that was pending. When Dickinson died he left a will naming his wife as residuary legatee. This will was admitted to probate September 23, 1920. August 21, 1921, appellant renounced her rights under this will and elected to take under section 12 of the Dower act. The circuit court of LaSalle county denied the prayer for relief in the partition suit, and its decree was affirmed by this court in an opinion filed December 19, 1922. (*Dickinson* v. *Dickinson,* 305 Ill. 521.) Just one week later appellant filed her bill in the circuit court of LaSalle county praying for a decree against Fenton compelling him to specifically perform the contract of June 29, 1920. Fenton answered the bill, denying that appellant was entitled to the relief prayed for the reason that she did not have a clear title to the land March 1, 1921, that she did not and could not furnish an abstract of title showing a merchantable title to the land, and that she had abandoned the contract. Dickinson's heirs, who were also his devisees, and who were, with Fenton, made parties to the bill, answered, admitting the averments of the bill with

the exception of the validity of the assignment of a one-half interest in the contract by Dickinson to appellant, the validity of which assignment they challenge. May 16, 1923, T. W. Smurr, an attorney of Ottawa, who was an office associate of Hanna, appeared in court in behalf of Hanna, who was ill at his home, and presented an amendment to the bill filed in this case, changing it from a bill for specific performance to a bill for cancellation of the contract and for partition. Hanna died June 7, and on the same day appellant was in Smurr's office, and Smurr told her that Hanna had directed him to amend the bill so that it would become a bill for partition of the land, and she said that it was done with her approval. Thereafter, June 16, Smurr was employed by appellant to prosecute this bill for partition. September 5 appellant was married to Wilbur Hayne and shortly thereafter they left for Colorado. When she returned, later in the fall, she discharged Smurr and employed Chase Fowler to represent her. December 27, 1923, Fowler dismissed the amendment filed by Hanna through Smurr on May 16, and the bill was amended to a bill for specific performance of the contract. The cause was referred to a master, who reported recommending a decree denying relief. Such a decree was entered and this appeal followed.

The rule established in this State by repeated decisions is that one must show that he is ready, able and willing to perform a contract on his part before he is entitled to a decree for specific performance of the contract. (*Congregation* v. *Congregation,* 300 Ill. 115; *Cable* v. *Hoffman,* 273 id. 272.) The uncontradicted evidence in this case is that on March 1, 1921, Fenton went to Hanna, the attorney representing appellant in this transaction, and expressed himself as ready, able and willing to perform the contract, and that Hanna said appellant was not able to perform on her part because she could not convey to him a merchantable title. The fact that Fenton wrote the letter stating that

he could not raise the money to complete the deal became immaterial when he advised appellant's attorney, shortly thereafter, that he would be ready to carry out his part of the agreement on March 1. By the contract the vendor agreed to deliver to the vendee an abstract showing a merchantable title, and the furnishing of this abstract of title was a prerequisite to the obligation to perform on the part of the vendee. *Carver* v. *VanArsdale,* 312 Ill. 220; *Vincent* v. *McElvain,* 304 id. 160; *Bothwell* v. *Schmidt,* 248 id. 586.

When the time came to perform the contract the partition suit brought by Dickinson's brother was pending in the circuit court. This suit challenged the title to the subject matter of the contract and rendered that title unmerchantable. It is well settled by the decisions of this court that the vendee cannot be compelled to take a doubtful title which will expose him to litigation. *Weberpals* v. *Jenny,* 300 Ill. 145; *Harding* v. *Olson,* 177 id. 298; *Hoyt* v. *Tuxbury,* 70 id. 331.

By the contract the vendor agreed to furnish an abstract showing a merchantable title. The abstract introduced in evidence by appellant on the hearing before the master showed that the 80-acre tract was entered by Benjamin Barrett, but it failed to show that Barrett ever conveyed this land to another. The abstract shows that the title of the vendor was one obtained by *mesne* conveyances from Merrick Houghton, but there is no showing that Houghton acquired title from anyone. Conceding the correctness of appellant's position that the title to this land is good, it does not relieve the vendor from complying with the provision of his contract, which required him to furnish an abstract showing a merchantable title. (*Geithman* v. *Eichler,* 265 Ill. 579.) There was nothing in the abstract to show that this apparently defective title was good under the Statute of Limitations. There can be no doubt that the break in the title is a defect calculated to excite the serious doubt of a reasonably prudent man as to the validity of

the title and without explanation would justify the rejection of the title by a purchaser. (*Ewing* v. *Plummer,* 308 Ill. 585.) Furthermore, the general rule is that the sufficiency of the abstract on a bill for specific performance is to be determined as of the date fixed by the contract when the party was to furnish the abstract and the deal was to be closed and not at some time subsequent to the filing of a bill for specific performance. *Baker* v. *Baker,* 284 Ill. 537; *Smith* v. *Hunter,* 241 id. 514.

Where the vendor rescinds or abandons his contract he cannot thereafter demand specific performance of it. (*King* v. *Walrath,* 313 Ill. 551.) Whether a contract has been rescinded or abandoncd by a party to it may be deduced from circumstances or course of conduct clearly evincing such rescission or abandonment. (*Hayes* v. *Carey,* 287 Ill. 274; *Lasher* v. *Loeffler,* 190 id. 150.) When the bill was amended in May, 1923, asking that the contract be canceled and that the land be partitioned, appellant clearly abandoned the contract. She contends that this amendment was made without her authority, but we regard the evidence to the contrary the more convincing. Smurr, who was not her attorney at the time, testifies specifically that the amendment was made at the direction of Hanna, who was her attorney, and that she approved the amendment when Smurr told her that Hanna had caused it to be made. Smurr's testimony is corroborated by her conduct thereafter. Again, she demanded and received one-half of the rent from this farm land during the years 1920, 1921 and 1922. This position could have been taken by her only on the theory that the contract was not in force and that she was entitled to half the land by reason of her renunciation of the will and election to take under section 12 of the Dower act. It is well settled that the proceeds due upon a contract for the sale of real estate made by the vendor during life, no deed having been executed, are a part of his personal estate. (*Skinner* v. *Newberry,* 51 Ill. 203.) It is also equally well

settled that the heirs or devisees of one who dies possessed of real estate are entitled to all the rents from said real estate accruing after the date of his death. (*LeMoyne* v. *Harding*, 132 Ill. 23; *Green* v. *Massie*, 13 id. 363.) Therefore her demanding and accepting one-half of the rent from the land which is the subject of this litigation is inconsistent with her claim that the contract is a binding and existing contract.

While there are circumstances which excuse delay in the prosecution of a bill for specific performance, (*Cohen* v. *Segal*, 253 Ill. 34,) ordinarily, where a party applies for relief after a long lapse of time, unexplained by equitable circumstances, courts will be cautious in enforcing a specific performance. (*Hatch* v. *Kizer*, 140 Ill. 583; *Hough* v. *Coughlan*, 41 id. 130; *Anderson* v. *Frye*, 18 id. 94; 2 Story's Eq. Jur.—13th ed.—95.) In this case suit was not brought to compel a specific performance of this contract until two farm years had elapsed, and then the suit was not diligently prosecuted. Where, after one of the parties fails to carry out his contract, the other party delays to proceed for such a length of time as to constitute acquiescence in the breach or a presumption of abandonment, relief in equity will be denied. (*Marsh* v. *Lott*, 156 Cal. 643, 105 Pac. 968.) It is only where the vendor has acted in good faith and there has been no change in the property or in the circumstances of the parties which would make it any more inequitable to enforce performance of the contract at the time performance is sought than at the time the contract by its terms should have been performed, that the long delay will be excused and a decree entered against the purchaser. *Heller* v. *McGuin*, 261 Ill. 588.

The court properly denied the prayer for specific performance, and the decree is therefore affirmed.

*Decree affirmed.*